Joseph J. Siprut*
*jsiprut@siprut.com*
Aleksandra M. S. Vold
*avold@siprut.com*
SIPRUT PC
17 N. State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.948.9212

Todd C. Atkins (SBN 208879)
*tatkins@siprut.com*
SIPRUT PC
701 B Street, Suite 1170
San Diego, CA  92101
619. 255.2380
Fax: 619.231.4984

*Pro hac vice* admittance to be sought

Counsel for Plaintiffs and the Proposed Putative Classes

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HODSDON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRIGHT HOUSE NETWORKS, LLC<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Robert Hodsdon ("Hodsdon" or "Plaintiff"), individually and on behalf of all others similarly situated, by and through his counsel, brings this Class Action Complaint against Defendant Bright House Networks, LLC ("Bright House" or "Defendant").  Plaintiff, on his own behalf and on behalf of a class of similarly situated individuals, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## I.   NATURE OF THE ACTION

1.     Cable television is a basic component of life in countless American households, viewed by many to be as ordinary as gas, electricity, or running water.  As the nation's sixth-largest cable operator, Bright House uses its position to collect personal information – such as names, addresses, social security numbers, and credit card numbers – from tens of millions of consumers across the country.

2.     After consumers terminate their service with Bright House, however, and this information is no longer needed to provide service or collect payment, Bright House continues to maintain personally identifiable information on all of its previous customers indefinitely.  This conduct violates the Cable Communications Policy Act, 47 U.S.C. § 551, *et. seq.* ("CCPA"), which requires cable providers to destroy personally identifiable information when it is no longer required for the purpose for which it was collected.

3.     Moreover, consumers are unaware that their personally identifiable information is retained indefinitely by Bright House, as Bright House fails to send annual privacy notices informing consumers that Bright House continues to retain their information.  This conduct constitutes additional violations of CCPA.

4.     Accordingly, Plaintiffs assert claims on their own behalf and on behalf of the other members of the below-defined Class for violations of CCPA, 47 U.S.C. § 551 (a) & (e), plus additional claims under California state law on behalf of a California Subclass.

## II.   JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which confers upon the Court original jurisdiction over all civil actions arising under the laws of the United States, and pursuant to 18 U.S.C. §§ 2520 and 2707 and 18 U.S.C. § 1030.  This Court also has supplemental jurisdiction over Plaintiffs' state statutory claims and common-law claims under 28 U.S.C. § 1367.

6.      In addition, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  In the aggregate, Plaintiffs' claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of states other than Bright House.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1301(a)(2), 1391(b)(2), and 1391(c)(2) as Bright House conducts substantial business in this District.  Specifically, Bright House provides cable and Internet services for residents and commercial facilities in cities in this District, subjecting it to this Court's personal jurisdiction and making it a "resident" of this District for purposes of venue.

## III.   PARTIES

*Plaintiffs*

8.      Robert Hodsdon ("Hodsdon") is a natural person and citizen of the State of California.

*Defendant*

9.      Bright House is a Delaware corporation headquartered at 5000 Campuswood Drive, Suite 1, in East Syracuse, New York.  Bright House is a rapidly expanding provider of cable television, high-speed Internet, and telephone service, with more than 2.4 million customers in the United States.  Bright House provides cable services to customers in Alabama, California, Florida, Indiana, and Michigan.

## IV.   FACTUAL BACKGROUND

*The Cable Communications Policy Act*

10.     On October 30, 1984, Congress passed the Cable Communications Policy Act ("CCPA") in order to promote competition among providers of cable services and establish a national policy concerning cable communications and their operators.  An important objective of Congress in establishing such a policy was to protect cable subscribers' sensitive personal information from misuse and improper disclosure.  To that end, Congress made sure that the Act incorporated privacy guidelines jointly established several years earlier by the 34 nations comprising the Organization for Economic Cooperation and Development.

11.     When CCPA was under debate, legislative leaders noted that both common-sense privacy concerns and the constitutional rights of citizens were at stake:

> Cable systems, particularly those with a 'two-way' capability, have an enormous capacity to collect and store personally identifiable information about each cable subscriber.  Subscriber records from interactive systems can reveal details about bank transactions, shopping habits, political contributions, viewing habits and other significant personal decisions.  It is [therefore] important that national cable legislation establish a policy to protect the privacy of cable subscribers.  A national policy is needed because, while some franchise agreements restrict the cable operator's use of such information, privacy issues raise a number of federal concerns, including protection of the subscribers' first, fourth, and fifth amendment rights.  At the same time, such a policy must also recognize and unnecessarily or unreasonably impede those flows of information necessary to provide the service to the subscribers.

H.R. Rep. 98-934 at 4666-67 (1984).

12.     These observations, now nearly 30 years old, are just as relevant today.  Subscribers continue to disclose some of their most sensitive identifying information to their cable operator as a condition of entering a contract for service.  Now – far more than ever before – Bright House and other cable operators are equipped to rapidly collect and indefinitely retain large volumes of this valuable data in their electronic records.

13.     There are numerous serious and troubling privacy issues implicated by Bright House's practice of retaining and misusing their former customers' personal information, including the risk of identity theft and conversion of personal financial accounts.

14.     Accordingly, CCPA affords consumers significant protection with respect to the collection, maintenance, and disclosure of personally identifiable information ("PII") provided by the subscriber to the cable operator.

15.     Specifically, CCPA requires cable operators to provide annual notice setting forth the "nature of personally identifiable information collected;" "the nature, frequency, and purpose of any disclosure" of that information; the "period during which such information will be maintained;" "the times and place at which the subscriber may have access to such information;" and the limitations imposed on the cable operator by this provision of CCPA.  47 U.S.C. § 551(a)(1).

16.     In addition, CCPA governs the way that cable operators are to destroy the PII of former subscribers.  CCPA requires that cable operators must destroy the PII of former subscribers "if the information is no longer necessary for the purpose for which it was collected" and there are no outstanding requests or orders for such information.  47 U.S.C. § 551(e).

17.     Under CCPA, "personally identifiable information" is not specifically defined. However, the courts have concluded that it broadly encompasses "specific information about the subscriber, or a list of names and addresses on which the subscriber is included."[1]

***Bright House's Collection of Consumers' PII***

18.     Founded in 1993 and based in East Syracuse, New York, Bright House has rapidly grown to become the nation's sixth-largest cable and high-speed Internet service.[2]  Bright House has 2.4 million subscribers in Bakersfield, California; Detroit, Michigan; Indianapolis,

---

[1] See, e.g., Scofield v. Telecable of Overland Park, Inc., 973 F.2d 874, 876 fn. 2 (10th Cir. 1992).
[2] http://en.m.wikipedia.org/wiki/Bright House (last visited September 18, 2012).

Indiana, and numerous cities in both Alabama and Florida.[3]  In 2007 (the most recent year for which information is available), the company earned nearly $15 million in gross revenues.[4]

19.    Bright House requests that subscribers provide PII to Bright House in order to receive cable service, including social security number, address, phone number, and credit and debit card information.

20.    Once Bright House obtains that information, it maintains a digital record system with every subscriber's personal information, adding to each consumer's file as they acquire more information.

21.    Bright House's online Privacy Policy provides as follows:

> We maintain customer information, including personally identifiable information, while you are a subscriber to Bright House services. We also maintain customer information for a period of time after you are no longer a subscriber if the information is necessary for the purposes for which it was collected or to satisfy legal requirements. These purposes typically include business, legal, accounting or tax purposes. If these purposes no longer apply, we will destroy the information according to our internal policies and procedures.[5]

***Bright House's Unlawful Retention of Consumers' PII***

22.    Bright House's Privacy Policy claims that customer information is destroyed when such information is no longer necessary for business, legal, tax, or accounting purposes. However, in practice, Bright House simply retains consumers' PII indefinitely.

23.    This indefinite retention of PII is prohibited by CCPA, which requires cable operators to "destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected." 47 U.S.C. § 551(e).

24.    Bright House also fails to provide CCPA-mandated privacy notices to customers whose accounts have been closed, but whose information is still retained by Bright House.

---

[3] Id.
[4] Id.
[5] http://www.BrightHouse.com/bakersfield/policies/customer-privacy (last visited Sept. 18, 2012).

Those consumers are thus unaware that their information is retained indefinitely by Bright House.

25.     CCPA requires that cable operators provide written notice at least once a year regarding the retention and disclosure of PII, "clearly and conspicuously" informing the consumer of "the nature of personally identifiable information collected ... and the nature of the use of such information; [ ] the nature, frequency, and purpose of any disclosure which may be made of such information, including an identification of the types of persons to whom the disclosure may be made; [ ] the period during which such information will be maintained by the cable operator; [and] the times and places at which the subscriber may have access to such information." 47 U.S.C. § 551(a).

26.     After the termination of services, Bright House fails to provide notice to consumers regarding the type of PII collected and retained, and any disclosure of that information that may have occurred.

***Consumers Place a High Value on Their PII***

27.     At a Federal Trade Commission ("FTC") public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information as follows:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy.  Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[6]

---

[6] *The Information Marketplace: Merging and Exchanging Consumer Data*, http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited May 20, 2012).

28.     Though Commissioner's Swindle's remarks are more than a decade old, they are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.[7]

29.     The FTC has also recognized that consumer data is a new – and valuable – form of currency.  In a recent FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point by observing:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable.  Data is currency.  The larger the data set, the greater potential for analysis – and profit.[8]

30.     Recognizing the high value that consumers place on their PII, many companies now offer consumers an opportunity to sell this information to advertisers and other third parties. The idea is to give consumers more power and control over the type of information that they share – and who ultimately receives that information. And by making the transaction transparent, consumers will make a profit from the surrender of their PII.[9]   This business has created a new market for the sale and purchase of this valuable data.[10]

---

[7] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited May 20, 2012).

[8] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited May 20, 2012).

[9] *You Want My Personal Data? Reward Me for It*, http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited May 20, 2012).

[10] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited May 20, 2012).

31.     In fact, consumers not only place a high value on their PII, but also place a high value on the *privacy* of this data.   Thus, the question is not *whether* consumers value such privacy; the question is "*how much* [consumers] value" that privacy.[11]

32.     Researchers have already begun to shed light on how much consumers value their data privacy – and the amount is considerable.   Indeed, studies confirm that "when [retailers'] privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[12]

33.     When consumers were surveyed as to how much they valued their personal data in terms of its protection against improper access and unauthorized secondary use – two concerns at issue here – they valued the restriction of improper access to their data at between $11.33 and $16.58 per website, and prohibiting secondary use to between $7.98 and $11.68 per website.[13]

34.     Given these facts, any company that transacts business with a consumer and then retains that consumer's PII in contravention of statutorily guaranteed privacy protections has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

***Facts Pertaining to Plaintiff Hodsdon***

35.     In or about June 1, 2005, Hodsdon signed up for Bright House cable services. Hodsdon provided Bright House with PII including his address, telephone number, and social security number, in order to receive the service.

36.     On or about February 4, 2011, Hodsdon canceled his service with Bright House.

37.     On information and belief, as of the date of this filing, Bright House still retains Hodsdon's PII.

---

[11] Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (emphasis added) (last visited April 25, 2012).

[12] Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (June 2011).

[13] Id.

38.     Since canceling his service, Hodson has never received notice from Bright House informing him that Bright House still retains his PII.  Specifically, Hodson has not received any notices from Bright House informing him of the nature of the information collected; the nature, purpose and frequency of any disclosure which was made of this information; the period of time during which Bright House will maintain this information; and the time and place that Hodson may gain access to this information.

## V.   CLASS ACTION ALLEGATIONS

39.      Plaintiff brings Count I, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons in the United States who signed up for cable service with Bright House, and whose personally identifiable information was retained by Bright House after the termination of services (the "Retention Class").

Excluded from the Retention Class are Bright House and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

40.     Plaintiff brings Count II, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons in the United States who signed up for cable service with Bright House, and who were never issued annual written notices from Bright House regarding Bright House's retention or disclosure of their personally identifiable information (the "Notice Class").

Excluded from the Notice Class are Bright House and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

41.     Plaintiff brings Counts III-V, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons residing in the State of California who signed up for cable service with Bright House, and whose personally identifiable information was retained by Bright House after the termination of services (the "California State Class").

Excluded from the California State Class are Bright House and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

42.     The Retention Class, Notice Class, and California State Class shall be referred to collectively as "the Class" below unless otherwise specified.

43.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the class are so numerous that individual joinder of all Class members in impracticable.  On information and belief, there are thousands of consumers who have been affected by Bright House's wrongful conduct.  The precise number of the Class members and their addresses is presenty unknown to Plaintiff, but may be ascertained from Bright House's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

45.     **Commonality and Predominance – Federal  Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

> a. whether Bright House engaged in the conduct as alleged herein;

b.  whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief and, if so, in what amount(s); and

c.  whether Plaintiff and other Class members are entitled to equitable relief, including but not limited to injunctive relief and restitution.

46.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform misconduct described above.

47.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)**. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.  The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

48.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Bright House has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class members as a whole.

49.    **Superiority – Federal Rule of Civil Procedure 23(b)(3)**.  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Bright House, so it would be impracticable for Class members to individually seek redress from Bright House's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a

potentional for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.   CLAIMS ALLEGED

### COUNT I
**Failure to Destroy Personally Identifiable Information
Violation of § 551(e) of the Cable Communications Policy Act
(On Behalf of the Retention Class)**

50.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1-49 as though fully set forth herein.

51.     Bright House is a "cable operator" as defined by CCPA because Bright House provides "cable services," which is "the one-way transmission to subscribers of [ ] video programming, or [ ] other programming service; [and] subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service."  47 U.S.C. § 522(5) & (6).

52.     CCPA mandates, among other things, that a cable operator "destroy personally identifiable information if the information is no longer necessary for the purpose for which is was collected." 47 U.S.C. § 551(e).

53.     After Plaintiff's accounts and the accounts of each of the members of the Retention Class were terminated, Bright House continued to maintain Plaintiff's PII even though such information was no longer necessary to maintain for the purpose for which it was collected.

54.     The foregoing conduct violates 47 U.S.C. § 551(e).

55.     Plaintiff and the Retention Class have suffered injuries as a result of Bright House's violation of 47 U.S.C. § 551.  Bright House's failure to destroy the PII of Plaintiff and the Retention Class, as required 47 U.S.C. § 551, constitutes injury in the form of a direct invasion of their federally protected privacy rights.  In addition, Bright House's failure to comply

with CCPA has deprived Plaintiff and the Retention Class of their ability to make informed decisions with respect to their privacy.

56.    Moreover, since Plaintiff and the Retention Class purchased cable services from Bright House, and Bright House was obligated to comply with CCPA, Bright House's failure to destroy their PII deprived them of the full value of the services that they bargained and paid for. Because Plaintiff and the Retention Class ascribe monetary value to their ability to control their PII, Plaintiff and the Retention Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of Bright House's violation of 47 U.S.C. § 551.

57.    Plaintiff's and the Retention Class' PII constitutes personal property.  Bright House's failure to comply with 47 U.S.C. § 551 has also deprived Plaintiff and the Retention Class of the opportunity to control that personal property for its own financial gain. Accordingly, Plaintiff and the Retention Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of Bright House's violation of 47 U.S.C. § 551.

58.    CCPA provides a private right of action to consumers who have been aggrieved by a violation of 47 U.S.C. § 551.  Specifically, any person aggrieved by any act of a cable operator violating 47 U.S.C. § 551 may recover "actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher." 47 U.S.C. § 551(f)(2)(A).

59.    In addition, any person aggrieved by any act of a cable operator violating 47 U.S.C. § 551 may recover punitive damages and "reasonable attorneys' fees and other litigation costs reasonably incurred." 47 U.S.C. § 551(f)(2)(B)&(C).

60.    Plaintiff, on behalf of himself and the Retention Class, therefore seek redress as provided by 47 U.S.C. § 551, including liquidated damages to the full extent permitted by CCPA, punitive damages, and reasonable attorneys' fees and other litigation costs.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT II
### Failure to Provide Adequate Notice
### Violation of § 551(a) of the Cable Communications Policy Act
### (On Behalf of the Notice Class)

61.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1-49 as though fully set forth herein.

62.     After the termination of services, Bright House continued to maintain Plaintiff's PII and the PII of each of the members of the Notice Class.

63.     Plaintiff and each of the members of the Notice Class did not receive a yearly privacy notice from Bright House as required under CCPA.

64.     The foregoing conduct violates 47 U.S.C. § 551(a).

65.     Plaintiff and the Notice Class have suffered injuries as a result of Bright House's violation of 47 U.S.C. § 551.  Bright House's failure to issue annual notices under CCPA, as required by 47 U.S.C. § 551, constitutes injury in the form of a direct invasion of the federally protected privacy rights of Plaintiff and the Notice Class.  In addition, Bright House's failure to comply with CCPA has deprived Plaintiff and the Notice Class of their ability to make informed decisions with respect to their privacy.

66.     Moreover, since Plaintiff and the Notice Class purchased cable services from Bright House, and Bright House was obligated to comply with CCPA, Bright House's failure to issue the requisite annual notices deprived them of the full value of the services that they bargained and paid for.  Because Plaintiff and the Notice Class ascribe monetary value to their ability to control their PII, Plaintiff and the Notice Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of Bright House's violation of 47 U.S.C. § 551.

67.     Plaintiff's and the Notice Class' PII constitutes personal property.  Bright House's failure to comply with 47 U.S.C. § 551 has also deprived Plaintiff and the Notice Class of the opportunity to control that personal property for his own financial gain.  Accordingly, Plaintiff

1 and the Notice Class have sustained, and continue to sustain, monetary and economic injuries as

2 a direct and proximate result of Bright House's violation of 47 U.S.C. § 551.

3      68.     CCPA provides a private right of action to consumers who have been aggrieved

4 by a violation of 47 U.S.C. § 551.  Specifically, any person aggrieved by any act of a cable

5 operator violating 47 U.S.C. § 551 may recover "actual damages but not less than liquidated

6 damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is

7 higher."  47 U.S.C. § 551(f)(2)(A).

8      69.     In addition, any person aggrieved by any act of a cable operator violating 47

9 U.S.C. § 551 may recover punitive damages and "reasonable attorneys' fees and other litigation

10 costs reasonably incurred."  47 U.S.C. § 551(f)(2)(B)&(C).

11     70.     Plaintiff, on behalf of himself and the Notice Class, therefore seeks redress as

12 provided by 47 U.S.C. § 551, including liquidated damages to the full extent permitted by

13 CCPA, punitive damages, and reasonable attorneys' fees and other litigation costs.

### COUNT III
**Violation of the California Customer Records Act,**
**Cal.Civ.Code § 1798.80, *et seq.***
**(On Behalf of the California State Class)**

17     71.     Plaintiff adopts and incorporates by reference paragraphs 1-49 of this Complaint

18 as if fully set forth herein.

19     72.     The California Customer Records Act ("CCRA") provides, in pertinent part, that

> A business shall take all reasonable steps to dispose, or arrange for
> the disposal, of customer records within its custody or control
> containing personal information when the records are no longer to
> be retained by the business by (a) shredding, (b) erasing, or (c)
> otherwise modifying the personal information in those records to
> make it unreadable or indecipherable through any means.

Cal.Civ.Code § 1798.81.

25     73.     Under the CCRA, "personal information" is defined as

> any information that identifies, relates to, describes, or is capable
> of being associated with, a particular individual, including, but not

> limited to, his or her name, signature, social security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information[.]

Cal.Civ.Code § 1798.80 (emphasis added).

74.     Plaintiff and the other members of the California State Class cancelled their subscription to and no longer use Bright House's services.  Therefore, Bright House no longer has any reason to retain the sensitive personal information of Plaintiff and the California State Class.  Nonetheless, Bright House has continued to retain this personal information in its records.

75.     In addition, on information and belief, Bright House has not taken a single step toward shredding, erasing, encrypting, or otherwise modifying Plaintiff's and the California State Class' personal information so as to make it unreadable or undecipherable by others.

76.     Plaintiff and the California State Class have suffered injuries as a result of Bright House's violation of the CCRA.  Bright House's failure to destroy their PII as required by the CCRA constitutes injury in the form of a direct invasion of their statutory rights.  In addition, Bright House's failure to comply with the CCRA has deprived Plaintiff and the California State Class of their ability to make informed decisions with respect to their privacy.

77.     Moreover, since Plaintiff and the California State Class purchased cable services from Bright House, and Bright House was obligated to comply with the CCRA, Bright House's failure to destroy their PII deprived them of the full value of the services that they bargained and paid for.  Because Plaintiff and the California State Class ascribe monetary value to their ability to control their PII, Plaintiff and the California State Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of Bright House's violation of the CCRA.

78.     Plaintiff's and the California State Class' PII constitutes personal property.  Bright House's failure to comply with the CCRA has also deprived Plaintiff and the California

State Class of the opportunity to control that personal property for its own financial gain. Accordingly, Plaintiffs and the California State Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of Bright House's violation of the CCRA.

79.     The CCRA provides a private right of action to consumers.  Specifically, it states that "[a]ny customer injured by a violation of this title may institute a civil action to recover damages."  Cal.Civ.Code § 1798.84(b).  In addition, the CCRA provides that "any business that violates, proposes to violate, or has violated this title may be enjoined."  Cal.Civ.Code § 1798.84(e).

80.     Plaintiff, on his own behalf and on behalf of the other members of the California State Class, seeks judgment in his favor and against Bright House, and awarding him and the other members of the California State Class injunctive relief and the maximum damages available under Cal.Civ.Code § 1798.84.

### COUNT IV
### Breach of Implied Contract
### (On Behalf of the California State Class)

81.     Plaintiffs adopt and incorporate by reference paragraphs 1-60 and 71-80 of this Complaint as if fully set forth herein.

82.     Those who subscribed to Bright House's cable service, including Plaintiff, were required by Bright House to provide their social security number, address, phone number, and credit card and debit card information.

83.     In providing this personal data to Bright House, Plaintiff and each of the other members of the California State Class entered into an implied contract with Bright House (the "Contract").  Pursuant to the Contract, Bright House became obligated to safeguard this data through all reasonable measures.  This obligation includes complying with industry standards.

84.     The industry standard applicable to the credit-card transaction described above is set forth in Requirement 3.1 of the Data Security Standard (DSS) promulgated by the Payment

Card Industry Security Standards Council.  Specifically, that standard requires the merchants to implement the following security measures:

> Keep cardholder data storage to a minimum by implementing data retention and disposal policies, procedures and processes, as follows.
>
> Implement a data retention and disposal policy that includes:
> - Limiting data storage amount and retention time to that which is required for legal, regulatory, and business requirements
> - Processes for secure deletion of data when no longer needed
> - Specific retention requirements for cardholder data
> - A quarterly automatic or manual process for identifying and securely deleting stored cardholder data that exceeds defined retention requirements[.][14]

85.     Bright House breached its Contract with consumers by failing to adopt and comply with the foregoing industry-standard practices, and by failing to destroy PII after the information is no longer necessary for the purpose for which it was collected.

86.     In addition, because the laws existing at the time and place of the making of the Contract are and were incorporated into the Contract, the Contract included obligations for the parties to abide by all applicable laws, including CCPA and the CCRA.

87.     Plaintiff and the California State Class performed their obligations under the Contract by paying the consideration owed to Defendant for the provision of cable service, and by complying with all applicable laws then in force.

88.     Bright House's failure to perform its contractual obligations imposed by CCPA and the CCRA – *i.e.*, the timely destruction of consumers' PII – constitutes a material breach of the Contract.

89.     Plaintiff and the California State Class have suffered actual damages as a result of Bright House's breach in the form of the value Plaintiffs and the California State Class ascribe to the confidentiality and timely destruction of their PII.  This amount is tangible and can be calculated at trial.

---

[14] PCI Security Standards Council LLC, Navigating PCI DDS: Understanding the Intent of the Requirements, v2.0 (October 2010), p. 20.

90.     Further, a portion of the services purchased by Plaintiff and the California State Class were intended to pay for Bright House's costs in timely destroying its customers' PII, as required by CCPA and the CCRA.

91.     Because Plaintiff and the California State Class were denied of services that they bargained and paid for and were entitled to receive—*i.e.*, confidentiality of their PII and timely destruction of same—Plaintiff and the California State Class incurred actual monetary damages in that they overpaid for the services they bargained for.

92.     Accordingly, Plaintiff and the California State Class seek an order declaring that Bright House's conduct constitutes a breach of contract, and awarding Plaintiff and the California State Class damages in an amount to be calculated at trial.

**COUNT V**
**Violation of Cal. Penal Code § 637.5**
**(On Behalf of the California State Class)**

93.     Plaintiff adopts and incorporates by reference paragraphs 1-49 of this Complaint as if fully set forth herein.

94.   Section 637.5 of the California Penal Code provides in pertinent part:

> Individual subscriber viewing responses or other individually identifiable information derived from subscribers ***may be retained and used by a satellite or cable television corporation only to the extent reasonably necessary for billing purposes and internal business practices, and to monitor for unauthorized reception of services.*** A satellite or cable television corporation may compile, maintain, and distribute a list containing the names and addresses of its subscribers if the list contains no other individually identifiable information and if subscribers are afforded the right to elect not to be included on the list. However, a satellite or cable television corporation shall maintain adequate safeguards to ensure the physical security and confidentiality of the subscriber information.

Cal. Penal Code § 637.5(b) (emphasis added).

95.     If a cable operator violates the above section of the California Penal Code, the subscriber may assert a private right of action for invasion of privacy.  Section 637.5 provides in pertinent part:

> Any aggrieved person may commence a civil action for damages for invasion of privacy against any satellite or cable television corporation, service provider, or person that leases a channel or channels on a satellite or cable television system that violates the provisions of this section.

Cal. Penal Code § 637.5(i) (the "California Penal Code").

96.     Plaintiff and the other members of the California State Class cancelled their subscription to and no longer use Bright House's services.  Therefore, Bright House no longer has any reason to retain the sensitive personal information of Plaintiff and the California State Class.  Nonetheless, Bright House has continued to retain this personal information in its records.

97.     In addition, on information and belief, Bright House has not taken a single step toward shredding, erasing, encrypting, or otherwise modifying Plaintiff's and the California State Class' personal information so as to make it unreadable or undecipherable by others.

98.     Plaintiff and the California State Class have suffered injuries as a result of Bright House's violation of the California Penal Code.  Bright House's failure to destroy their PII as required by the California Penal Code constitutes injury in the form of a direct invasion of their statutory rights.  In addition, Bright House's failure to comply with the California Penal Code has deprived Plaintiff and the California State Class of their ability to make informed decisions with respect to their privacy.

99.     Moreover, since Plaintiff and the California State Class purchased cable services from Bright House, and Bright House was obligated to comply with the California Penal Code, Bright House's failure to destroy their PII deprived them of the full value of the services that they bargained and paid for.  Because Plaintiff and the California State Class ascribe monetary value to their ability to control their PII, Plaintiff and the California State Class have sustained,

and continue to sustain, monetary and economic injuries as a direct and proximate result of Bright House's violation of the California Penal Code.

100.   Plaintiff's and the California State Class' PII constitutes personal property. Bright House's failure to comply with the CCRA has also deprived Plaintiff and the California State Class of the opportunity to control that personal property for its own financial gain. Accordingly, Plaintiff and the California State Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of Bright House's violation of the California Penal Code.

101.   Plaintiff, on his own behalf and on behalf of the other members of the California State Class, seeks judgment in his favor and against Bright House, and awarding him and the other members of the California State Class injunctive relief and the maximum statutory damages available under California Penal Code.

## VII.   <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII.   <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully request that the Court enter an Order awarding the following relief:

A.   Declaring that this action may be maintained as a class action, and certifying the Classes as requested herein;

B.   Enjoining Bright House from the unlawful practices and statutory violations asserted herein;

C.   An Order awarding liquidated damages pursuant to CCPA;

D.   An Order awarding punitive damages pursuant to CCPA;

E.  An Order awarding compensatory damages pursuant to the California statutes and common-law causes of action asserted herein;

F.  An Order awarding attorneys' fees and costs pursuant to CCPA; and

G.  Such other and further relief as may be just and proper.

Dated: September 26, 2012                    Respectfully submitted,

ROBERT HODSDON, on behalf of himself
and all others similarly situated,


By:   /s/ Todd Atkins
          One of the Attorneys for Plaintiff
          and the Proposed Putative Classes

Joseph J. Siprut*
*jsiprut@siprut.com*
Aleksandra M. S. Vold*
*avold@siprut.com*
SIPRUT PC
17 N. State Street
Suite 1600
Chicago, Illinois  60602
312.236.0000
Fax: 312.948.9212

Todd C. Atkins
*tatkins@siprut.com*
SIPRUT PC
701 B Street, Suite 1170
San Diego, CA  92101
619. 255.2380
Fax: 619.231.4984


*Pro hac vice* admittance to be sought

4815-9484-4689, v.  1