**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT HODSDON, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BRIGHT HOUSE NETWORKS, LLC,<br><br>Defendant. | Case No.: 1:12-cv-01580 - AWI - JLT<br><br>FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION<br><br>(Doc. 7) |

Bright House Networks, LLC ("Defendant" or "Bright House") seeks to compel arbitration and stay this action initiated by Plaintiff Robert Hodsdon ("Plaintiff" or "Hodsdon"). (Doc. 7). Plaintiff filed his opposition to the motion on February 5, 2013 (Doc. 16), to which Defendant filed a reply on February 19, 2013. (Doc. 19). On February 21, 2013, the matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). (Doc. 25).

The Court heard oral arguments of counsel on March 14, 2013. For the following reasons, the Court recommends Defendant's motion to compel arbitration be **GRANTED**.

## I. Relevant Factual and Procedural History

Plaintiff alleges he signed up for cable service from Bright House on June 1, 2005, and cancelled his service on February 4, 2011. (Doc. 1 at 9). Plaintiff asserts Bright House still retains his information, "including his address, telephone number, and social security number," which were given

to obtain the cable service. *Id.* According to Plaintiff, "Bright House uses its position to collect personal information – such as names, addresses, social security numbers, and credit card numbers – from tens of millions of consumers across the country." *Id.* at 2. Plaintiff asserts Bright House "maintain[s] personally identifiable information on all of its previous customers indefinitely." *Id.* at 2, 6. In addition, Plaintiff contends Bright House fails to send annual privacy notices to consumers, informing them of the retainer of personally identifiable information. *Id.*

For these actions, Plaintiff initiated this class action by filing a complaint on September 26, 2012, alleging Defendant is liable for violations of the Cable Communications Policy Act as set forth in 47 U.S.C. § 551, *et seq.* (Doc. 1 at 13-15). In addition, Plaintiff alleges violations of the California Customer Records Act (Cal. Civ. Code § 1798.80), breach of implied contract, and Cal. Penal Code § 637.5. *Id.* at 16-22.

On December 12, 2012, Defendant filed a motion to compel arbitration, asserting "the arbitration agreement between the parties is (1) valid and enforceable under the FAA; (2) encompasses Hodsdon's claims; and, (3) must be enforced according to its terms, which, among other terms, requires that Hodsdon's claims be arbitrated on an individual, non-class basis." (Doc. 7 at 2).

## II. Legal Standard

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party seeking to enforce arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The Court's role in applying the FAA is "limited to determining whether a valid agreement to arbitrate exists and, if so, whether the agreement encompasses the dispute as issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). To determine whether an arbitration agreement encompasses particular claims, the Court looks to the plain language of the agreement, and "[i]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-86 (1960).

Because the FAA "is phrased in mandatory terms," "the standard for demonstrating arbitrability is not a high one [and] a district court has little discretion to deny an arbitration motion." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). As a result, arbitration should only be denied when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986). It is well-established that "arbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation." *Lifescan*, 363 F.3d at 1011.

**III. Terms of the Arbitration Agreement**

Bright House created an "Agreement for Residential Services," ("the Agreement") which sets forth the terms and conditions of services from Bright House for its customers. (Doc. 7-4). In addition, the Agreement includes an arbitration provision, which states:

> (a) If you have a Dispute (as defined below) with BHN that cannot be resolved, you or BHN may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means that you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury.
>
> (b) As used in this Provision, the term "Dispute" means any dispute, claim or controversy between you and BHN regarding any aspect of your relationship with BHN or the BHN Parties that has accrued or may hereafter accrue, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort), or any other legal or equitable theory.

(Doc. 7-4 at 11). In addition, the provision includes a "Right to Opt Out," which provides a customer may opt-out of the arbitration provision by providing written notice to Bright House within thirty days from the date of receiving the Agreement. *Id.* The Agreement includes a "special note regarding arbitration to California customers," which states: "If you are a BHN customer in California, BHN will not seek to enforce the arbitration provision above unless we have notified you otherwise." (Doc. 7-4 at 12).

///

## IV. Discussion and Analysis

When determining whether a valid and enforceable agreement to arbitrate has been established for the purposes of the FAA, the Court should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (2002). Here, the Agreement provided that it was "subject to all applicable federal, state, or local laws and regulations, including any applicable franchise agreement, in effect in the relevant jurisdiction(s) in which [the customer] receive[s] . . . Services." (Doc. 7-4 at 14). Because Plaintiff received services in Florida, the parties agree the law of the state of Florida governs the determination of whether the agreement is valid. (*See* Doc. 7-1 at 17-18; Doc. 16 at 16).

### A. Validity and enforceability of the arbitration agreement

Pursuant to Florida contract law, "the basic requirements of [a] contract" include "offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).

Defendant contends the arbitration provision is valid and enforceable under general principals of contract law. (Doc. 7-1 at 17-18). According to Defendant, "the evidence establishes that Hodsdon and Bright House agreed to the terms of the Agreement for Residential Services and the Arbitration Agreement within it." *Id.* at 17. Defendant asserts: "[O]n no less than two occasions, Hodsdon manifested his acceptance of the Arbitration Agreement when he signed Bright House Work Orders that stated he had received the Agreement for Residential Services and agreed to be bound by its terms, which include the Arbitration Agreement." *Id.* (citing *Sultanem v. Bright House Networks, L.L.C.*, 2012 WL 4711963, at *2 (M.D. Fla. Oct. 3, 2012). Further, Defendant contends Plaintiff demonstrated his acceptance of the terms by not opting out of the agreement and "by accepting and continuing to receive Bright House services." *Id.* (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991); *Rivera v. AT&T Corp.*, 420 F. Supp. 2d 1312, 1320-21 n. 13 (S.D. Fla. 2006).

Plaintiff does not dispute the Agreement for Residential Services is a contract. Rather, he asserts the arbitration provision is unenforceable because the arbitration provision is unconscionable under Florida law. (Doc. 16 at 14-23).

The Supreme Court explained an arbitration agreement may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability..." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011). Under Florida law, a court may refuse to enforce an agreement if it was "unconscionable at the time it was made." Fla. Stat. § 672.302. Thus, an arbitration agreement may be invalidated as unconscionable if "the clause is both procedurally and substantively unconscionable." *Stewart Agency, Inc. v. Robinson*, 855 So. 2d 726, 727 (Fla. 4th DCA 2003) (citing *Chapman v. King Motor Co. of S. Fla.*, 833 So. 2d 820, 821 (Fla. 4th DCA 2002)). Procedural unconscionability focuses upon "the manner in which the contract was entered," while substantive unconscionability emphasizes "the actual agreement and whether the terms are reasonable and unfair." *Id.*, 855 So. 2d at 727-728. Both forms of unconscionability must be present in order for a court to find a contract unenforceable. *Eldridge v. Integrated Health Servs. Inc.*, 805 So. 2d 982 (Fla. 2d DCA 2001); *Davis v. Powertel, Inc.*, 776 So. 2d 971, 975 (Fla. 1st DCA 2000).

1. Procedural Unconscionability

Evaluating procedural unconscionability, the Court "should consider factors such as 'whether the complaining party had a realistic opportunity to bargain regarding the terms of the contract, or whether the terms were merely presented on a 'take-it-or-leave-it' basis; and whether he or she had a reasonable opportunity to understand the terms of the contract." *Brea Sarasota, LLC v. Bickel*, 95 So.3d 1015 (Fla. 2nd DCA 2012) (quoting *Gainesville Health Care Ctr. v. Weston*, 857 So. 2d 278, 284 (Fla. 1st DCA 2003)). In *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010), the Court describes these factors a little differently as, "(1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract."

Although not dispositive of the issue, a "significant" factor of procedural unconscionability is whether the subject arbitration clause is part of "an adhesion contract." *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999). In general, a contract of adhesion is a "standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis without

affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract." *Id.* (citation omitted).

*a. Excluded information did not render the making of the agreement procedurally unconscionable.*

Plaintiff argues the agreement fails to set forth the details as to the arbitration, such as who will be the arbitrator, where it will be held and the rules of the arbitration, and that this failure demonstrates the unfair manner in which the parties entered into the contract. (Doc. 16 at 18) In essence, Plaintiff contends that because he did not have these details, he did not have the ability to understand to what he was agreeing. In this way, Plaintiff shoehorns that lack of substantive terms into support for his argument an argument there is procedural unconscionability.[1]

Notably, at the hearing, Plaintiff's counsel admitted there *was* a meeting of the minds. Implicit in this admission is that there was agreement as to the essential terms of the contract; the intention to be bound to arbitration. *DiMase v. Aquamar 176, Inc.*, 835 So. 2d 1150, 1152 (Fla. Dist. Ct. App. 2002) rev'd on reh'g en banc, 835 So. 2d 1158 (Fla. Dist. Ct. App. 2003) (A "meeting of the minds" defense succeeds only where the parties have failed to agree on an essential term of the contract.")

Moreover, as Plaintiff admits, a Florida Court of Appeals has determined "the failure to designate the 'rules' under which the arbitration would be covered did not invalidate the arbitration clause." *Premier Real Estate Holdings, LLC v. Butch*, 24 So.3d 708, 710 (Fla. 4th DCA 2009). Further, the Federal Arbitration Act provides that the Court may appoint an arbitrator if one is not identified in an arbitration agreement. 9 U.S.C. § 5; *see also Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308 at 1312-13 (11th Cir. 2005) (because "the Federal Arbitration Act provides courts with the authority to identify an arbitrator," the court rejected the argument "that the arbitration clause is unenforceable because it does not specify the identity of the arbitrator, forum, location, or allocation of

---

[1] The Court recognizes that some courts have analyzed these factors as related to procedural, rather than substantive, unconscionability. However, Florida law narrows the factors to consider on procedural unconscionability to those related to the making of the contract. Thus, the Court is hard-pressed to find the lack of substantive terms could constitute procedural unconscionability. However, given the artful manner in which the lack of these substantive terms are raised, the Court will evaluate them as if they implicate procedural unconscionability.

costs from the arbitration"). Accordingly, the Court rejects Plaintiff's argument that the lack of information renders the arbitration agreement procedurally unconscionable.

*b. The agreement was not provided on a "take it or leave it" basis.*

"To determine whether a contract is procedurally unconscionable, a court must decide whether the complaining party had a meaningful choice at the time the contract was signed." *Brea Sarasota*, 95 So. 3d at 1017 (citing *Tampa HCP, LLC v. Bachor*, 72 So. 3d 323, 327 (Fla. 2d DCA 2011)). In *Brea Sarasota*, the Second District Court of Appeal of Florida ("Second District") evaluated a contract that gave the appellee "fifteen days to 'opt-out' of arbitration under the terms of the agreement." *Id.*, 95 So. 3d at 1017. Further, the court noted the agreement contained a notice that an individual "could avoid arbitration and still take advantage of the facilities." *Id.* Consequently, the court determined "the agreement was not procedurally unconscionable." *Id.* Likewise, the court determined a contract was not procedurally unconscionable where the evidence did not support a finding that the consumer could not have obtained services without acquiescing to the terms of the arbitration agreement. *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 265 (Fla. 2nd DCA 2004).

The facts now before the Court are analogous to *Brea Sarasota* and *Orkin.* The arbitration provision in Bright House's Residential Services Agreement was not offered on a "take-it-or-leave it basis." Rather, Plaintiff had the right to choose not to be bound to arbitration, and Bright House informed Plaintiff of the procedure by which he could opt-out of arbitration. Specifically, the Agreement provided:

> Right to Opt Out. IF YOU DO NOT WISH TO BE BOUND BY THIS ARBITRATION PROVISION, YOU MUST NOTIFY BHN IN WRITING WITHIN 30 DAYS FROM THE DATE THAT YOU FIRST RECEIVE THIS AGREEMENT. YOUR WRITTEN NOTIFICATION TO BHN MUST INCLUDE YOUR NAME, ADDRESS AND BHN ACCOUNT NUMBER AS WELL AS A CLEAR STATEMENT THAT YOU DO NOT WISH TO RESOLVE DISPUTES WITH BHN THROUGH ARBITRATION. YOUR DECISION TO OPT OUT OF THIS ARBITRATION PROVISION WILL HAVE NO ADVERSE EFFECT ON YOUR RELATIONSHIP WITH BHN OR THE DELIVERY OF SERVICES TO YOU BY BHN.

(Doc. 7-4 at 11) (emphasis in original). Thus, Bright House offered Plaintiff a choice of whether to be subject to the arbitration agreement, without the threat of suspending his services, and gave him thirty days to make the decision.

In *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002), the Ninth Circuit Court of Appeals found that an arbitration agreement containing a similar opt out provision, was not procedurally unconscionable. In *Circuit City*, the arbitration agreement provided a 30-day opt-out period from the date of the signing of the contract. *Id*. In finding this provision provided a meaningful opportunity to opt out, the Court held that the 30-day period provided, "ample opportunity to investigate any provisions [the plaintiff] did not understand before deciding whether to opt out of [the] arbitration program." *Id.* Thus, the Court finds that the arbitration agreement was not procedurally unconscionable.

2. Substantive Unconscionability

A contract is substantively unconscionable only if its terms are "so outrageously unfair" that the terms "shock the judicial conscience." *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284-85 (citing *Belcher v. Kier*, 558 So. 2d 1039, 1043 (Fla. 2d DCA 1990) (declining to equate "unconscionability" with mere "unreasonableness")). In essence, a substantively unconscionable contract is "one that no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Belcher*, 558 So. 2d at 1044 (quoting *Hume v. United States*, 132 U.S. 406 (1889)).

Notably, under Florida law, "[i]f the arbitration agreement is not procedurally unconscionable, the court does not reach substantive unconscionability." *Id.*; *see also Frantz v. Shedden*, 974 So. 2d 1193, 1197 (Fla. 2nd DCA 2008) ("the determination that the Agreement is not procedurally unconscionable is dispositive of the issue of its enforceability"); *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1027 (Fla. 4th DCA 2005) (declining to address substantive unconscionability where there is finding that the agreement is not procedurally unconscionable). Nevertheless, the terms of the contract do not support a finding that the arbitration provision is so unreasonable that it shocks the conscience.

Plaintiff takes exception to the fact that acceptance of the modification was presumed by the mere continued use of the services. Toward this end, Plaintiff relies upon *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, ___ F.Supp.2d ____, 2012 WL 4466660 (D. Nev. Sept. 27, 2012), for the proposition that if an arbitration agreement can be unilaterally changed by one party, it fails for

lack of mutuality. Notably, in *Zappos*, users were bound by the "Terms of Use" merely by browsing the website. *Id.* at *3. Users did not have to make a purchase or affirmatively accept the Terms of Use to be bound. *Id.* Though the user could obtain the terms of use from every Zappos web page by opening a link, there was no evidence the plaintiff had ever clicked on the link such to be informed of the terms. *Id.* In addition, once the terms were imposed, Zappos could modify them without notice to the customer and without any demonstration the customer agreed to the change. *Id.* As a result, the court determined the arbitration clause contained in the Terms of Use was illusory and unenforceable. *Id.* at *5.

Here, the parties agreed Bright House could modify the terms of the agreement but only after it gave notice and that Plaintiff could refuse the modification by terminating the services. (Doc. 7-4 at 2) This is significantly different from the situation in *Zappos*. Moreover, Plaintiff's fear that Bright House could modify the arbitration agreement any time it wished, even after the customer sought arbitration, is unfounded because the Bright House customer can always reject the modification.[2] Therefore, though Bright House maintained the right to modify the agreement, this provision was tempered by Plaintiff's right to refuse to agree to the modification by terminating the agreement. (Doc. 7-4 at 2)

Likewise, Plaintiff contends that because the "multiple carve-outs" from the arbitration agreement which benefitted only Bright House, the agreement was substantively unconscionable. However, as admitted by Plaintiff's counsel the right to use to use the small claims court benefitted both parties. Likewise, the right to sue directly under the local franchise agreement benefitted only the customer. As to the final "carve-outs," the parties agree that they apply to Bright House. However, Plaintiff's counsel admitted also that it was "conceivable" that the exclusions from arbitration related to enforcement of intellectual property rights and for unlawful receipt of service, applied also to the customer, though counsel disagreed that this would be a common circumstance. However, in *In re DirecTV Early Cancellation Fee Mktg. and Sales Practices Litig.*, 810 F.Supp.2d 1060, 1069

---

[2] Moreover, here, Bright House's ability to make modifications to the agreement—including an arbitration demand--ended at the time Plaintiff terminated services because, of course, he no longer *could* accept them by continuing to use the services.

(C.D.Cal.2011), the court found sufficient to avoid a finding of substantive unconscionability, that both parties receive at least a "conceivable" benefit created by the "carve-outs." Thus, the Court does not find the agreement to be substantively unconscionable.

**B. The arbitration agreement encompasses the disputes at issue.**

The party resisting arbitration bears the burden of showing that the arbitration agreement does not encompass claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000). To determine whether an arbitration agreement encompasses particular claims, the Court looks to the plain language of the agreement, and "[i]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-86 (1960).

1. Effect of the notice to California customers

The parties disagree about whether the arbitration agreement applies to Plaintiff's claims because Plaintiff is now a California resident, and the arbitration provision contains the following language:

> (f) SPECIAL NOTE REGARDING ARBITRATION FOR CALIFORNIA CUSTOMERS: IF YOU ARE A BHN CUSTOMER IN CALIFORNIA, BHN WILL NOT SEEK TO ENFORCE THE ARBITRATION PROVISION ABOVE UNLESS WE HAVE NOTIFIED YOU OTHERWISE.

(Doc. 7-4 at 12) (emphasis in original). According to Plaintiff, this language provides "an exclusion for California residents such as Plaintiff." (Doc. 16 at 11). Plaintiff contends: "[T]he Arbitration Provision makes no distinction between current customers and former customers. Indeed, if the term "customers" only meant *current* customers, than [sic] any claims filed by a "former customer" (such as Plaintiff) would necessarily fall outside of the scope of the Arbitration Provision *entirely*." *Id.* at 13 (emphasis in original). Further, Plaintiff contends: "Because the Arbitration Provision only takes effect once a claim is filed, the exclusion for "customers located in California" would look to the customer's location at the time of filing." *Id.*

In response, Defendant asserts: "Hodsdon was a Bright House customer in Florida only, and he produces no evidence, much less the clear evidence of intent that the law requires, that the exclusion

was intended to apply to subscribers who were *customers* outside of California and later became California *residents*." (Doc. 24 at 9) (emphasis in original). Defendant asserts "the plain language of the note regarding California customers upon which [Plaintiff] relies does not apply to him. *Id.* at 17. According to Defendant, "The applicability of the note regarding California customers is determined by the location in which a plaintiff entered into the Agreement for Residential Services with Bright House and received service pursuant to that Agreement, not by where they happened to live when they filed suit." *Id.* at 17-18. The Court agrees.

Plaintiff's argument that he is a "California customer" fails given that he received service from Bright House in Florida, not California.[3] The parties agreed that services were to be "provided only to the location identified on [the] Work Order." (Doc. 7-4 at 14). Plaintiff's work orders clearly indicate a Florida address (*see* Doc. 7-3 at 2; Doc. 7-7 at 2), and he admits "he received his service while living in Florida, rather than California." (Doc. 16 at 13). Because Plaintiff received services only in Florida, he was not a "California customer" to whom the notice was directed.

<u>2. Disputes encompassed by the arbitration agreement</u>

Plaintiff contends the arbitration agreement excludes Cable Act claims because Defendant's Privacy Policy provides that a customer "may . . . enforce the limitations imposed on [Bright House] by the Cable Act with respect to . . . personally identifiable information through a civil lawsuit in federal district court seeking damages, attorneys fees and litigation costs." (Doc. 16 at 15) (quoting Doc. 7-6 at 6). On the other hand, Defendant contends Bright House was required to include this information in its Privacy notice pursuant to the Cable Act, and the language of the Cable Act "does not evince a congressional intent to override the FAA." (Doc. 25 at 15) (citing 47 U.S.C. § 551(f)(1)-(2)).

Significantly, the arbitration provision specifies it encompasses "any dispute . . . whether based in contract, *statute*, regulation, ordinance, tort . . . or any other legal or equitable theory." (Doc. 74 at

[3]Plaintiff's assertion that his claim accrued at the time he filed his complaint, is unsupported by law. At a minimum, the claim accrued either at the time when Bright House should have destroyed his PII or when he learned that the PII was not destroyed. Notably, he fails to provide any information as to when this occurred either here or in his complaint for damages. Even still, even if this occurred while Plaintiff was a California resident, based upon the unambiguous language of the agreement, the Court's analysis here, would not vary. Notably, the agreement indicates that it covers every dispute "which has accrued or may hereafter accrue." (Doc. 7-4 at 11)

11, emphasis added). With this broad definition, the Court rejects Plaintiff's argument and finds that providing the privacy notice--which informed customers they may enforce their rights in the district court-- does not constitute "forceful evidence" that the parties intended the statutory claim for violations of the Cable Act to be excepted from the arbitration clause. Thus, the Court finds Plaintiff's claims for violations of the Cable Act are encompassed within the arbitration provision.

## V. Findings and Recommendations

Plaintiff and Defendant entered into a valid arbitration agreement, which encompasses the issues in dispute. As a result, "there is a presumption of arbitrability" and motion to compel arbitration should not be denied. *See AT&T Tech., Inc.*, 475 U.S. at 650.

Accordingly, **IT IS HEREBY RECOMMENDED**:

1. Defendant's motion to compel arbitration be **GRANTED**;

2. If the parties are unable to select the arbitrator, the rules of the arbitration and the location of the arbitration within 30 days of the date the Court adopts these Findings and Recommendations, within 30 days thereafter each side be **ORDERED** to select one arbitrator and the two selected arbitrators then select the third arbitrator and that this panel determine the rules by which the arbitration will proceed and the location of the arbitration;

3. The matter be **STAYED** to allow the completion of the arbitration; and

4. The Court retain jurisdiction to confirm the arbitration award and enter judgment for the purpose of enforcement.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the Objections shall be filed and served within 14 days of the date of service of the objections.

///

///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **March 14, 2013**

**/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE